**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JIMMY MCDOUGLE,

       Petitioner,

       v.

CHRISTOPHER HOLMES, et al.,

       Respondents.

Civil Action No. 12-6692 (JBS)

**OPINION**

**APPEARANCES:**

    JIMMY MCDOUGLE, 975281A
    South Woods State Prison
    215 Burlington Road South
    Bridgeton, New Jersey 08302
      *Petitioner Pro Se*

    ANDREW ROBERT BURROUGHS, ESQ.
    ESSEX COUNTY PROSECUTOR
    50 West Market Street – 3rd Floor
    Newark, New Jersey 07102
      *Attorneys for Respondents*

**SIMANDLE, Chief Judge[1]**

    Jimmy McDougle[2] filed a Petition for a Writ of Habeas Corpus

under 28 U.S.C. § 2254 challenging a judgment of conviction

---

[1] This case was reassigned to the undersigned following the death of the Hon. Dickinson R. Debevoise in August, 2015.

[2] The name of Petitioner on the § 2254 Petition is "McDougle," but state court orders and opinions have spelled his name as "McDougle," "McDougal," and "McDougald."  In this Opinion the Court will use "McDougle," the name on the § 2254 Petition.

filed in the Superior Court of New Jersey, Essex County, on November 18, 1992.  The State filed an Answer with the record. After carefully reviewing the arguments of the parties and the state court record, this Court will dismiss the Petition with prejudice and deny a certificate of appealability.

## I.  BACKGROUND

A.  The Crimes

McDougle challenges a judgment of conviction imposing a life sentence with 32.5 years of parole ineligibility imposed by the Superior Court of New Jersey, Law Division, Essex County, on November 18, 1992, after a jury found him guilty of the first-degree murder of Dwayne Fields, third-degree unlawful possession of a weapon, and second-degree possession of a weapon for an unlawful purpose.  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), state court factual findings are presumed correct unless rebutted by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).  As McDougle has not attempted to rebut the factual findings of the Superior Court of New Jersey, the Court will rely on those findings. The Appellate Division found the following facts on McDougle's direct appeal from the conviction after his second trial:

> [S]hortly after midnight on Sunday, February 11, 1990, the victim, Dwayne Fields, was fatally shot in the

2

back as he was about to enter his home after being
dropped off by several companions.  The State's theory
of the shooting was that defendant had been sitting in
a car double parked in front of the victim's home,
waiting for him to arrive.  When the victim left the
car in which he had been driven home, defendant called
to him, exited the double-parked car, conversed with
the victim briefly, and then shot and killed him.
Defendant then reentered the car, which was occupied
by a group of his friends, and it sped away.  The
asserted motive for the killing was retaliation for
defendant's loss of the bottom part of his leg as the
result of a gunshot wound, defendant believing that
the victim was closely involved with the shooting or
the shooter.  Although there was no eyewitness to the
actual shooting, the State produced witnesses who,
collectively, had observed sufficient segments of the
event to warrant the inference, beyond a reasonable
doubt, that defendant was the gunman.

State v. McDougal, Docket No. A-2627-92T4 sl. opinion (N.J.

Super. Ct., App. Div., Oct. 13, 1994) (ECF No. 21-14 at 54-55).

The testimony at trial established that the gunshot was

heard by the victim's brother Michael and his sister who were

waiting for the victim, and Andrews, the victim's friend who

lived across the street.  When he heard the shot Michael looked

out of the window and saw a man get into a white double-parked

Audi which sped away.  Andrews looked out of his window and also

saw the double-parked car speed away.  Findley, who was

returning home, saw the car double-parked with its engine

running; he recognized the driver, saw two other people in the

car, and saw McDougle and the victim standing on the street

3

speaking to each other.  Findley parked his car, entered his house, which was a few houses away from the victim's home, went upstairs, and heard the shot within two or three minutes after having seen the victim speaking with McDougle.

Kenneth Graves, Jonathan Graves, and their friend Thomas Sewell also testified for the State.  After drinking all evening, sometime after midnight the three young men, already intoxicated, wanted to go to a bar but they had no money. Kenneth Graves drove Sewell, who lived on the same street as the victim, and his brother Jonathan to Sewell's house.  Sewell went into his house for about 15 minutes and, when he returned to the car, he was joined on the street by McDougle, who got into the car with the three men, and Kenneth drove to a bar a few blocks away.  Sewell testified that he neither heard a shot nor saw a gun and the Graves brothers testified that they had the stereo turned up loud and they didn't hear the gun either.

Findley's brother, Razhoon, testified that a week before the shooting, he heard McDougle saying that there was a connection between the victim and Sal, the person who had previously shot McDougle in the leg.  Razhoon testified that he heard McDougle say, "Watch what I do when I see [the victim." State v. McDougle, Docket No. A-1421-90T4 sl. opinion (N.J.

4

Super. Ct., App. Div., Mar. 5, 1992) (ECF No. 21-14 at 41.)   The medical examiner testified that the cause of death was a gunshot wound administered by a small-caliber gun that was fired from a foot or a foot and one-half away from the victim.

B.   The State Court Proceedings

The state court proceedings in this case were protracted, involving two trials, two appellate opinions on direct appeal, two evidentiary hearings on McDougle's post-conviction relief petition, and two appellate opinions on post-conviction relief. McDougle was indicted in April 1990 for the first-degree murder of Dwayne Fields on February 11, 1990, as well as two weapons charges.   After the jury found him guilty of all charges, the trial court sentenced him to life plus five years in prison with a 32.5-year period of parole ineligibility.   On direct appeal, the Appellate Division reversed and remanded for a new trial on the ground that a son of one of the jurors had been shot and killed in the street on the first day of deliberations and, as a result, McDougle's right to a fair trial was compromised.   See State v. McDougald, Docket No. A-1421-90T4 sl. opinion (N.J. Super. Ct., App. Div., Mar. 5, 1992) (ECF No. 21-14 at 37-50). After a second trial, the jury found McDougle guilty of all charges and the trial court imposed the same sentence.   McDougle

appealed and on October 13, 1994, the Appellate Division affirmed.  See State v. McDougal, Docket No. A-2627-92T4 sl. opinion (N.J. Super. Ct., App. Div., Oct. 13, 1994) (ECF No. 21-14 at 53-59.)  The New Jersey Supreme Court denied certification on January 25, 1995.  See State v. McDougal, 142 N.J. 448 (1995) (table).

On September 27, 1996, McDougle filed his petition for post-conviction relief.  After conducting an evidentiary hearing and considering the testimony of defense counsel but not McDougle, the trial judge denied post-conviction relief by order and opinion filed July 20, 1998.  McDougle appealed, raising three grounds.  On March 21, 2000, the Appellate Division rejected two of the grounds but remanded for supplementation of the record by the testimony of McDougle.  See State v. McDougle, Docket No. A-457-98T4 sl. opinion (N.J. Super. Ct., App. Div., Mar. 21, 2000) (ECF No. 1-8.)  On July 7, 2000, the New Jersey Supreme Court denied certification.  See State v. McDougle, 165 N.J. 487 (2000) (table).  After conducting the evidentiary hearing on remand and considering McDougle's testimony, on August 21, 2008, the trial judge again entered an order denying post-conviction relief.  (ECF No. 1-10 at 6.)  McDougle appealed and on July 8, 2011, the Appellate Division affirmed.  See State

v. McDougal, 2011 WL 2652142 (N.J. Super. Ct., App. Div., July 8, 2011).  The New Jersey Supreme Court denied certification on December 8, 2011.  See State v. McDougal, 208 N.J. 601 (2011) (table).

C.  Procedural History of § 2254 Petition

On September 27, 2012, McDougle signed his Petition for a Writ of Habeas Corpus and presumably handed it to prison officials for mailing to the Clerk.  (ECF No. 1.)  By Order entered March 7, 2013, the Court construed the Petition as raising three grounds and notified McDougle of his right to amend the Petition to include all available federal claims in accordance with Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). (ECF No. 4.)  McDougle declined to file an amended petition raising additional grounds or to dispute the Court's recitation of the grounds raised in the Petition.  (ECF No. 5.)  The Petition, accordingly, raises the following three grounds:

> Ground One:  DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF PCR COUNSEL, WHO FAILED TO CHALLENGE THE CONSTITUTIONAL EFFECTIVENESS OF APPELLATE COUNSEL IN MISSING CRITICAL JURY CHARGE ERRORS.
>
> Ground Two:  DEFENDANT WAS DENIED HIS CONSTITUTIONAL GUARANTEE OF EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE TRIAL COUNSEL'S FAILURE TO RAISE CREDIBLE DOUBT ABOUT WHETHER DEFENDANT WAS THE SHOOTER HAD A CLEAR CAPACITY TO CAUSE AN UNJUST RESULT.

A.  Trial counsel failed to cross-examine witnesses using information available but not used at trial that would have created doubt that defendant was the shooter and failed to advance a theory that occupants of the white Audi were equally likely perpetrators.

(1) Trial counsel failed to argue or pursue a theory that occupants of the Audi were equally probable perpetrators of the murder even if defendant was in the Audi.

(2) Trial counsel failed to cross-examine witnesses using the grand jury testimony of Michael Fields.

(3) Trial counsel failed to have an effective plan or strategy to overcome the State's evidence.

B.  But for counsel's errors defendant would have been acquitted.

Ground Three:  THE TRIAL JUDGE'S DECISION NOT TO PERMIT DEFENDANT TO PRESENT HIS OWN TESTIMONY ON THE INEFFECTIVENESS OF TRIAL COUNSEL AT HIS [PCR] EVIDENTIARY HEARING DENIED DEFENDANT DUE PROCESS OF LAW.

(Order, ECF Nos. 4 at 1-2, 14 at 2-3.)

The State filed an Answer arguing that McDougle is not entitled to habeas relief and that the Petition does not state a claim.[3]  (ECF No. 21.)  McDougle did not file a reply.

_____

[3] The Court notes that, although the State did not raise the statute of limitations as an affirmative defense, the Petition may be untimely.  The one year statute of limitations is governed by 28 U.S.C. § 2244(d)(1)(A), which provides that it begins on the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.  In this case, the New Jersey Supreme Court denied certification on direct review on January 25, 1995, and the time to file a petition

## II.  STANDARD OF REVIEW FOR RELIEF UNDER § 2254

Section 2254 of title 28 of the United States Code sets limits on the power of a federal court to grant a habeas petition to a state prisoner.  See Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).  Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Where a state court adjudicated petitioner's federal claim on the merits,[4] as in this case, a court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or

_____

for certiorari in the United States Supreme Court expired 90 days later on April 25, 1995.  See Gonzalez v. Thaler, 132 S.Ct. 641, 653-54 (2012); Wali v. Kholi, 131 S. Ct. 1278, 1282 (2011).  The limitations period began the next day, on April 26, 1995, and ran for 365 days until April 25, 1996, five months before McDougle filed his petition for post-conviction relief in the trial court.  See Long v. Wilson, 393 F.3d 390, 394-95 (3d Cir. 2004) (state post conviction review petition had no effect on tolling because the limitations period had already run when it was filed); Schlueter v. Varner, 384 F.3d 69, 78-79 (3d Cir. 2004) (same).

[4] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that 1) finally resolves the claim, and 2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." Shotts v. Wetzel, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States', or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Parker v. Matthews, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).  "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  Woods v. Donald, 135 S.Ct. 1372, 1376 (2015).  The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits.  See Pinholster, 131 S.Ct. at 1398.

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004).  "[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-court decision.  Woods, 135 S.Ct. at 1376 (quoting White v. Woodall, 134 S.Ct. 1697, 1702 (2014), and Williams v. Taylor, 529 U.S.

362, 412 (2000)).  A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams, 529 U.S. at 405-06.  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id., 529 U.S. at 413.

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply.  First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  29 U.S.C. § 2254(e)(1); see Miller-El v. Dretke, 545 U.S. 231, 240 (2005).  Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision

11

that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

### III. DISCUSSION

A.  <u>Ineffective Assistance of Post-Conviction Relief Counsel</u>

In Ground One, McDougle asserts that post-conviction relief counsel was constitutionally ineffective for failing to raise certain claims.  The problem with this ground is that the AEDPA specifies that "the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief [under § 2254(a)]."  28 U.S.C. § 2254(i).  "[M]ost naturally read, § 2254(i) prohibits a court from granting substantive habeas relief on the basis of a lawyer's ineffectiveness in post-conviction proceedings." <u>Martel v. Clair</u>, 132 S. Ct. 1276, 1287 n.3 (2012); <u>see also</u> <u>Martinez v. Ryan</u>, 132 S.Ct. 1309, 1320 (2012).  Thus, McDougle's claim alleging the effectiveness of his counsel during post-conviction proceedings is not cognizable under § 2254 as a matter of law.  <u>See</u> 28 U.S.C. § 2254(i); <u>see also</u> <u>Stevens v. Epps</u>, 618 F.3d 489, 502 (6th Cir. 2010) ("Ineffectiveness of post-conviction counsel cannot be the grounds for federal habeas relief"); <u>Post v. Bradshaw</u>, 422 F.3d 419, 423 (6th Cir. 2005)

12

(holding that petitioner's motion for relief from judgment based on post-conviction counsel's failure to pursue discovery was not permitted under § 2254(i) because it was grounded in claim of ineffective representation during the federal post-conviction review).

B.   Ineffective Assistance of Trial Counsel

In Ground Two, McDougle asserts that counsel was constitutionally ineffective in failing to pursue a theory that the other occupants of the Audi were equally probable perpetrators of the murder, failing to cross-examine witnesses using the grand jury testimony of Michael Fields, and failing to have an effective strategy to overcome the State's evidence. The State argues that McDougle is not entitled to habeas relief on his ineffective assistance of trial counsel claims because the adjudication of those claims was not contrary to or an unreasonable application of Supreme Court precedent.

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. See Strickland v. Washington, 466 U.S. 668, 686 (1984).  A claim

that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  Id. at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness[.]" Hinton v. Alabama, 134 S.Ct. 1081, 1083 (2014) (per curiam).  To satisfy the prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case."  Strickland at 693.  To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission."  Hinton, 134 S.Ct. at 1083.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable

14

doubt respecting guilt." _Id._ at 1089 (quoting _Strickland_, 466
U.S. at 695).

McDougle presented the above ineffective assistance of
trial counsel claims in his petition for post-conviction relief
and on his first appeal from the denial of post-conviction
relief by the trial court.  The Appellate Division rejected each
of these grounds for the reasons expressed by the trial court in
its 25-page written opinion.  (ECF No. 1-8 at 5.)  Accordingly,
this Court will review the reasonableness of the trial court's
findings of fact and legal conclusions under § 2254(d).

(1) Failure to Argue That Occupants of the Audi Were
Equally Probable Perpetrators

In the first point of Ground Two of petitioner's § 2254
petition, which was point seven of his amended post-conviction
relief petition, McDougle argued that counsel was ineffective in
cross-examining Jonathan Graves, Kenneth Graves, and Thomas
Sewell – who testified that they were in the Audi with McDougle
– because the cross-examination did not show that they were
equally probable perpetrators of the shooting.  The trial court
rejected this argument as in conflict with counsel's trial
strategy:

> [I]n light of counsel's testimony at the evidentiary
> hearing, it is abundantly clear as to why counsel did
> not attempt to characterize Sewell or either of the

15

Graves brothers as the shooter.  Because it was beyond
dispute that [McDougle] was in a white car with these
individuals immediately after the shooting, such a
characterization would have exposed [McDougle] to
criminal liability as an accomplice.  Perhaps more
significantly in the context of this trial, such a
suggestion would have been in irreconcilable conflict
with the strategy at trial, which relied on the jury's
acceptance of a "two car" theory.  In short, such
reference would have eviscerated the defense and
exposed the defendant to criminal liability under an
additional theory.

(ECF No. 21-14 at 114-115.)

In assessing counsel's performance, "a court must indulge a
strong presumption that counsel's conduct falls within the wide
range of reasonable professional assistance; that is, the
defendant must overcome the presumption that, under the
circumstances, the challenged action might be considered sound
trial strategy."  Strickland, 466 U.S. at 689 (citation and
internal quotation marks omitted).  The habeas petitioner "bears
the burden of proving that counsel's representation was
unreasonable under prevailing professional norms and that the
challenged action was not sound strategy."  Kimmelman v.
Morrison, 477 U.S. 365, 381 (1986) (citing Strickland, 466 U.S.
at 688-689).  In addition, this Court must presume the
correctness of the trial court's factual finding that it is
beyond dispute that McDougle was in the car with Sewell and the
Graves brothers immediately after the shooting.  See 28 U.S.C. §

16

2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").[5]

In this case, the state courts found that counsel's alleged failure not to characterize the other occupants of the Audi as being the shooter was trial strategy.  This determination is not contrary to or an unreasonable determination of the facts in the record, nor is it contrary to, or an unreasonable application of Strickland and its progeny.  See United States v. Leggett, 162 F.3d 237, 247 (3d Cir. 1998) ("[T]here is no constitutional right to be represented by a lawyer who agrees with the defendant's trial strategy.  Mere disagreement between defendant and counsel with regard to strategic decisions does not create a

---

[5] See also Miller-El v. Dretke, 545 U.S. at 240 (holding that a district court must " presume the [state] court' s factual findings to be sound unless [petitioner] rebuts the ' presumption of correctness by clear and convincing evidence.'"); Rountree v. Balicki, 640 F.3d 530, 541-42 (3d Cir. 2011) (habeas court is " bound to presume that the state court' s factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence.") (quoting Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009)).

17

situation severe enough to compel a district court to
investigate whether the defendant's rights are being
impinged[.]"). Accordingly, McDougle is not entitled to habeas
relief under § 2254(d)(1) or (2) on this claim.

(2) Failure to Cross-Examine Witnesses Using the Grand Jury
Testimony of Michael Fields

In the second point of Ground Two of the present § 2254
petition, which was point three of his amended post-conviction
relief petition, McDougle claimed that trial counsel was
deficient in failing to present at trial the grand jury
testimony of Michael Fields. The trial court determined that
counsel was not deficient and that McDougle had not shown
prejudice:

> The theory is that the grand jury testimony of Fields
> should have been used at trial to discredit the
> testimony of other witnesses. Before the grand jury,
> Fields testified that he saw an individual get into
> the backseat of a car. Other witnesses stated that an
> unidentified individual got into the frontseat of an
> Audi. (T. March 23, 1992 p3). Fields testified at
> trial that he did not "recall exactly" where the
> individual was located but that "he was just getting
> in – jumping in the car." (T. Nov. 6, 1992 p11).
>
> The record illustrates that Fields was cross-examined
> extensively regarding his prior testimony and the
> inconsistencies between such testimony and his
> testimony at trial. (T. Nov. 6, 1992 p25-6). Defense
> counsel specifically questioned Fields as to where he
> was located when he saw someone jump into the car.
> This was clearly an effort by defense counsel to
> suggest that Field's testimony may be inaccurate due

18

> to where he was located when he saw a figure get into
> a white car.  Inasmuch as counsel had successfully
> challenged the recollection of Fields, the
> presentation of his grand jury testimony to discredit
> other witnesses would have done little to improve the
> case for the defense.  In fact, because the defense
> relied, in part, on the testimony of those witnesses
> who had observed someone get into the frontseat of an
> Audi, an all out assault on the credibility of the
> witnesses would have been detrimental to the defense.
> Therefore, defense counsel's failure to introduce the
> transcript was not deficient, and in any event clearly
> did not prejudice the defendant.

(ECF No. 21-14 at 110-111.)

As with respect to his previous claim, McDougle has not overcome the presumption of correctness with respect to the findings of fact made by the trial court, nor has he shown that the adjudication of this claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Davis v. Ayala, 135 S.Ct. 2187, 2199 (2015) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).  He is, therefore, not entitled to habeas relief based on this ineffective assistance of counsel claim.

(3) Failure to Have an Effective Strategy

In the third point of Ground Two of the present § 2254 petition, which was point four of his amended post-conviction relief petition, McDougle argued that counsel lacked any plan or

19

strategy to overcome the state's case.  The trial court rejected

this claim as follows:

> This allegation come[s] without any reliable
> independent proof, and, moreover, a careful
> examination of the transcripts clearly show[s]
> counsel's strategy.  The transcript indicates that
> defense counsel's strategy was that a reasonable doubt
> existed "within the framework of the state's own
> case." (T. Nov. 12, 1992 p.42-3).  This strategy,
> coupled with defense counsel's careful assessment that
> proposed defense witnesses would not "stand up at all"
> on cross examination, were defense counsel's stated
> reasons for not calling any witnesses.  And, defense
> counsel made these strategic decisions after
> "significant discussions" with his client.
>
> The Court specifically questioned the petitioner about
> this strategy and the performance of his attorney at
> the end of the State's case.  The petitioner did not
> complain, but instead stated, "I am satisfied, Your
> Honor." (T. Nov. 12, 1992 p.46).
>
> In the apparent absence of any favorable witnesses,
> and in the face of an abundance of evidence which
> placed petitioner at the crime scene with a motive,
> trial counsel zealously defended his client.  Counsel
> conducted vigorous cross-examination.  Trial counsel
> attempted to discredit the State's witnesses by
> challenging observations, questioning recollections,
> and exposing biases."

(ECF No. 21-14 at 111.)

Again, McDougle has not overcome the presumption that the

trial court's factual findings concerning counsel's conduct and

the existence of a trial strategy were correct.  In addition, he

has not pointed to any strategy, aside from arguing the

existence of a reasonable doubt, that would have shown that

there is a reasonable probability that the outcome of the trial would have been different. As the Supreme Court explained, counsel cannot be constitutionally deficient in failing to pursue a strategy that he or she thought had little chance of success:

> [T]he state court's rejection of [Petitioner's] ineffective-assistance-of-counsel claim [based on counsel's failure to present an insanity defense] was consistent with Strickland . . . The law does not require counsel to raise every available nonfrivolous defense . . . . Counsel also is not required to have a tactical reason-above and beyond a reasonable appraisal of a claim's dismal prospects for success - for recommending that a weak claim be dropped altogether. [Petitioner] has thus failed to demonstrate that his counsel's performance was deficient.

Knowles v. Mirzayance, 556 U.S. 111, 126-27 (2009) (citations, internal quotation marks and footnote omitted).

Based on the foregoing, McDougle is not entitled to habeas relief on this ineffective assistance of counsel claim because he has not shown that it was based on an unreasonable determination of the facts in light of the evidence presented or contrary to or an unreasonable application of Strickland or other Supreme Court precedent.

C.   Trial Court's Failure to Permit Petitioner to Testify at Post-Conviction Relief Hearing

21

In Ground Three, McDougle asserts that the post-conviction relief judge's "decision not to permit [McDougle] to present his own testimony on the ineffectiveness of trial counsel" violated due process.  McDougle raised this ground on his appeal from the initial order denying his post-conviction relief petition.  See State v. McDougle, Docket No. A-457-98T4 sl. opinion (N.J. Super. Ct., App. Div., Mar. 21, 2000) (ECF No. 1-8 at 5.)  On that appeal, the Appellate Division "f[ou]nd merit . . . in defendant's contention that he should have been allowed to speak on his own behalf as part of the evidentiary hearing," id., and remanded "for supplementation of the record by the testimony of the defendant."  Id. at 7.  "The trial court held another evidentiary hearing at which defendant testified and denied defendant's PCR petition by order dated August 21, 2008."  State v. McDougle, 2011 WL 2652142 at *1.  When McDougle appealed the second order denying the petition for post-conviction relief he did not challenge the manner in which the trial court permitted him to testify or claim that he was again denied the opportunity to testify.  Because McDougle prevailed in the New Jersey courts on this ground, it is not cognizable on habeas review. Moreover, the entire record, including McDougle's testimony, was

considered by the PCR court before issuing its 2008 denial of PCR relief.

D.    Certificate of Appealability

McDougle has not made a substantial showing of the denial of a constitutional right.  Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B). See Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

**IV.    CONCLUSION**

This Court dismisses the Petition with prejudice and denies a certificate of appealability.

                              s/ Jerome B. Simandle
                              JEROME B. SIMANDLE
                              Chief Judge

Dated:  December 8, 2015

23